## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MISSOURI, SOUTHERN DIVISION

| | |
|---|---|
| CHRISTOPHER CROSS, as an individual and in his capacity of being a duly appointed legal guardian<br><br>Plaintiff,<br>v.<br><br>GREENE COUNTY PRESIDING COMMISSIONER ROBERT "BOB" CIRTIN, in his personal capacity, and<br><br>GREENE COUNTY SHERIFF JAMES "JIM" ARNOTT, in his personal capacity<br><br>Defendants. | ) <br> ) <br> ) <br> ) <br> ) Civil Case No. _____<br> ) <br> ) <br> ) <br> ) JURY DEMAND AND CERTIFICATION AS<br> ) CLASS ACTION REQUESTED<br> ) <br> ) <br> ) <br> ) <br> ) |

---

### COMPLAINT WITH ATTACHED EXHIBITS INCORPORATED HEREIN

COMES NOW, Christopher Cross, in pro se manner, as both an individual and in his capacity of being a duly appointed legal guardian, and with his COMPAINT against the named Defendants, as herein averred by following.

### I. CAUSE OF ACTION

1.     This is a civil action filed against defendants pursuant to 42 U.S.C. § 1983 for alleged violations of the First, Fourth, and Fourteenth Amendments to the U.S. Constitution, and his state claims under to Article I, § 5, § 8, § 9, § 10, and § 15 to the Missouri Constitution, Mo. Rev. Stat. § 475.120.4 (2009) Mo. Rev. Stat. § 455.010(1)(c) (2016) and § 565.090.1(1) and / or (6) and § 575.080.1(1) and / or (2) (2016).

2.     This Complaint alleges that on August 22, 2016, Defendant Robert "Bob" Cirtin sent the Plaintiff, Christopher Cross, an electronic mail (e-mail) implicating Defendant James "Jim" Arnott in a conspiracy to deprive or abridge Plaintiff Christopher Cross' civil rights, liberties, and / or privileges, by a meeting of the minds or agreement to commit the same, and to carry out or fulfill

their conspiracy by threatening to file a false police report to commit battery against Plaintiff Christopher Cross. At no time did Defendant James "Jim" Arnott disavow his participation despite knowing the allegation and having ample opportunity to do so, or show the same under Mo. Rev. Stat. § 43.180.1 (2016).

3.     This Complaint alleges that on August 22, 2016, Defendant Robert "Bob" Cirtin sent Plaintiff Christopher Cross an e-mail showing that the conduct Defendant Cirtin engaged in, is predicated upon Defendant Cirtin's political dissent against Plaintiff Christopher Cross' political and / or religious speech in his published article, "I Am" is good enough.

## II. CERTIFICATION AS CLASS ACTION REQUESTED

4.     This action presents substantial and material questions of federal law in that, not only in the Defendants depriving rights, liberties and / or privileges guaranteed to the Plaintiff and those similarly situation by the First and Fourteen Amendments to the U.S. Constitution, and Article I § 5, § 8, § 9, and § 10 to the Missouri Constitution, but also under the Fourth and Fourteenth Amendments to the U.S. Constitution, and Article I, § 10, and § 15 to the Missouri Constitution, and the statutory rights under Mo. Rev. Stat. § 475.120.4 and § 475.370 (2009), § 455.010(1)(c) and § 57.100.1, § 565.090.1(1) and / or (6), and § 575.080.1(1) and / or (2) (2016), and 42 U.S.C. § 12203(a)(b) that also guarantee citizens the right to be free of government oppression.

5.     The tier of facts and totality of circumstances involved, as discussed throughout this Complaint, show there are substantial and material questions of federal law or fact(s) that are common to the class, that the claims or defenses of the representative party in this action, Christopher Cross, are typical of the claims or defenses of the class, that class members are so numerous that joinder of all members is impractical, and that the representative party in this action, Plaintiff Christopher Cross, will fairly and adequately protect the interests of the class.

2

### III. JURISDICTION AND VENUE

6.      This Court has jurisdiction over these claims pursuant to 28 U.S.C. § 1331 and § 1343 and 42 U.S.C. § 1983 and by its supplemental jurisdiction over Plaintiffs' claims under Missouri law based on 28 U.S.C. § 1367, as the state claims are so related to the federal claims that they form part of the same case and controversy to create a common nucleus of operative fact, under Article III of the United States Constitution.

7.      This Court has personal jurisdiction over each Defendant, in that, *inter alia*, they are employees or agents of Greene County, Missouri or facilities, departments, or agencies of Greene County, Missouri who are herein sued in their personal capacities under 42 U.S.C. § 1983, and they are Missouri residents and citizens, who regularly and routinely conduct business in and with the State of Missouri, Greene County.

8.      The relevant acts of the Defendants occurred pursuant to state law, and under color of state law, which resulted in and will continue to result in the deprivation or abridgement of and the irreparable harms to guaranteed constitutional laws, and / or to the state and / or federal statutory rights, liberties and / or privileges of the Plaintiff and those similarly situated. Therefore venue is proper in this court under 28 U.S.C. § 1391(b).

### IV. NOTICE OF CLAIMS & EXHAUSTION OF REMEDIES

9.      Plaintiff Christopher Cross has no obligation to exhaust administrative remedies for his claims, and no administrative process is available for, which Plaintiff Christopher Cross could use to redress his grievances, and Defendants did not want prior notice given to them.

### V. PARTIES

10.      On all relevant dates, Plaintiff Christopher Cross, (hereinafter "Plaintiff" or "Cross"), was and is a citizen of Missouri, who lawfully engaged in protected activities in exercising his clearly

3

established constitutional rights and / or liberties of political and religious speech, assembly, or association. Plaintiff files this Complaint *pro se*, in his individual capacity and his duly appointed legal guardian capacity. Plaintiff's mailing address is P.O. Box 5814 Springfield, Missouri 65801.

11. On all relevant dates, Defendant Robert "Bob" Cirtin, (hereinafter "Defendant Cirtin") was and is a citizen of Missouri, who acted under color of state law pursuant to Mo. Rev. Stat. § 49. 010, in his publicly elected capacity, title, office, authority, and / or position as the Presiding Commissioner for Greene County, Missouri, and having substantial influence with or control over Defendant James "Jim" Arnott, the Greene County Sheriffs' Department, and its deputy sheriffs by virtue of his publicly elected office, duties, and authority of Presiding Commissioner of Greene County, Missouri. Defendant Cirtin is herein sued in his personal capacity under 42 U.S.C. § 1983. Defendant Cirtin's address is 933 North Robberson Springfield, Missouri 65802.

12. On all relevant dates, Defendant James "Jim" Arnott (hereinafter "Defendant Arnott") was and is a citizen of Missouri who acted under color of state law pursuant to Mo. Rev. Stat. § 57.010 (2016) in his law enforcement capacity, title, office, authority and / or position, and in his publicly elected capacity, title, office, authority, and / or position, as the Greene County, Missouri Sheriff, and in collusion with Defendant Cirtin. Defendant Arnott is sued in his personal capacity under 42 U.S.C. § 1983. His address is, Judicial Center 1010 Boonville Avenue, Springfield, Missouri 65802.

## VI. INTRODUCTION

13. Plaintiff herein incorporates, pleads, and realleges ¶ 1 to ¶ 12 and all Exhibits attached to this Complaint, into each and every paragraph below and vice versa, by reference and in full force and effect, as if originally pled.

14. Plaintiff regularly authors and publishes articles on the professional Internet website,

4

Linkedin, [Exhibit 11], to engage in political and religious speech, assembly or association, involving matters of public interest or concern. Plaintiffs articles, respectively, are read all across the United States, and in China, London, Canada, Amsterdam, South Africa, Brazil, Switzerland, Portugal, India, and the United Kingdom, among many other places. Those reading the articles, respectively, include politicians, attorneys, judges, professors, police officers, journalist, social workers, ordinary citizens, hospitality personnel, security officers, property managers, salesmen, public relations personnel, construction workers, and many others.

15.    Although many use Linkedin for professional contacts in employment opportunities, the Plaintiff specifically and methodically set up his Linkedin account with purpose to reach a broad audience of learned professionals and lay people from all walks of life and throughout the world in order to engage in political speech, assembly, or association. The article's Plaintiff writes hold a political purpose, tone, and message, and deal with a variety of subjects and issues that are of public interest or concern. To reach beyond Plaintiffs' network of contacts, the Plaintiff publishes his articles in various learned publication sections of Linkedin, for peer review, and to reach a broader audience who would otherwise not have access to the Plaintiffs' articles.

16.    On August 21, 2016, the Plaintiff authored and published his article on Linkedin, entitled, "I Am" is good enough, [Exhibit 1], which raises and discusses the philosophical question of what is meant by the word "America" today, in contrast to a half century ago, based on Plaintiffs political and religious beliefs. Plaintiff then sent his article to numerous government officials, the media, and others by e-mail [Exhibit 3] and included Defendant Cirtin, by and through his official county government e-mail address.

17.    At the heart of this action is the right, liberty or privilege of the Plaintiff and those similarly situated, to engage in lawful political or religious speech, assembly, or association, without

5

governmental intrusion that illegally and / or unlawfully deprives or abridges their clearly established, guaranteed and protected constitutional rights, liberties or privileges by threatening to file or filing *false* criminal charges to frighten, intimidate, coerce, or cause emotional distress, to force Plaintiff and those similarly situated to abstain from engaging in their protected activities by committing battery and criminal harassment against the Plaintiff and others similarly situated and / or falsely imprisoning them, by enforcing or attempting to enforce a state law that the Defendants know or should know the Missouri Supreme Court invalidated, severed, and made wholly unenforceable. See *State v. Vaughn*, 366 S.W.3d 513, 519-521 (Mo. 2012) (en banc)

## VII. FACTUAL ALLEGATIONS

18.     Plaintiff herein incorporates, pleads, and realleges ¶ 1 to ¶ 17 and all Exhibits attached to this Complaint, into each and every paragraph below and vice versa, by reference and in full force and effect, as if originally pled.

19.     Pursuant to Mo. Rev. Stat. § 49.020, Defendant Cirtin is a publicly elected official serving as Greene County Commissioner and holding the position of Presiding Commissioner.

20.     According to the Internet website ( https://www.greenecountymo.org/commission/ ) "The Greene County Commission is the executive body of Greene County operating under guidelines established in the Revised Statutes of the State of Missouri. Within that authority the Commission enacts ordinances, resolutions, and policies, supervises the activities of county departments, fixes salaries, adopts the annual budget, provides for construction and other services, and conducts hearings on planning and zoning matters."

21.     As shown in Springfield News Leader articles the Greene County Commissioners such as, but not limited to, Defendant Cirtin, play an integral role in administrative functions of the Greene County Sheriff's Department and its jail, and personnel matters, up to and including, but

6

not limited to, administrative budgets, seeking voter approval for increased taxes to pay for jail operations and personnel salaries, and entering into contracts with the City of Springfield for the purpose of housing prisoners.

22. As a direct or proximate result, and where the Greene County Internet website points out, ". . .the Commission . . . . supervises the activities of county departments. . ." this gives Defendant Cirtin a supervisory capacity, role, and authority over Defendant Arnott to establish a severe and pervasive conflict of interest that requires Defendant Arnott to make formal request to the Missouri Highway Patrol to intervene and investigate alleged criminal acts by Defendant Cirtin, pursuant to Defendant Arnott's statutory authority under Mo. Rev. Stat. § 43.180.1 (2016) and his fiduciary and / or legal duties owed to Plaintiff and others similarly situated.

23. Pursuant to Mo. Rev. Stat. § 57.010, Defendant Arnott is a publicly elected official in the capacity of being the Greene County Sheriff.

24. According to the Greene County, Missouri Sheriff's Department website, statement from Defendant Arnott, (http://greenecountymosheriff.org/cms/index.php?page=sheriff-jim-arnott ) he "is the Chief Law Enforcement Officer for Greene County, Missouri" who "is directly responsible to the citizens of Greene County" and "holds the ultimate responsibility for administration, command of both internal and external operations of the Greene County Sheriff's Office."

25. Pursuant to Mo. Rev. Stat. § 57.100.1 (2016) Defendant Arnott knows that "Every sheriff shall quell and suppress assaults and batteries, riots, routs, affrays and insurrections; shall apprehend and commit to jail all felons and traitors, and execute all process directed to him by legal authority, including writs of replevin, attachments and final process issued by circuit and associate circuit judges."

26. Pursuant to Mo. Rev. Stat. § 455.010(1)(c) (2016), one example of how battery occurs is

7

that of coercion by "compelling another by force or threat of force to engage in conduct from which the latter has a right to abstain or to abstain from conduct in which the person has a right to engage." However, as noted in the list of "definitions" under Mo. Rev. Stat. § 455.010, the word "force" itself is **_not_** defined, and, thus, it cannot be said to be exclusively limited to using or threatening to use only physical force. Therefore, the word "force" in the state law can be fairly and reasonably said to include threatening a person with criminal charge that the person knows, should know, or can reasonably foresee constitutes filing a **_false_** police report in violation of Mo. Rev. Stat. § 575.080.1(1) and / or (2), which is done with purpose to force another to engage in or abstain from engaging in a specified act, in violation of Mo. Rev. Stat. § 455.010.1(c).

27.      On all relevant dates, the Plaintiff was engaged in constitutionally guaranteed, protected activities, in lawful manner, with numerous publicly elected officials, media personnel, and other individuals for purposes of political and religious speech, by sending an e-mail communication with the Internet website link to the Plaintiffs' published article, "I Am" is good enough. Plaintiff sent his article to Defendant Cirtin by Defendant Cirtin's **_official_** government e-mail address and **_not_** to Defendant Cirtin's personal or private business "gmail" account for e-mails.

28.      Plaintiff had the absolute, positive, and specific right, liberty, or privilege to engage in his protected activities with publicly elected officials such as, but not limited to, Defendant Cirtin, pursuant to the First and Fourteenth Amendments to the U.S. Constitution, and Article I § 5, § 8 and § 10 to the Missouri Constitution, which Defendants Cirtin and Arnott knew or should have known, yet, knowingly, willfully, intentionally, and maliciously violated.

### VIII. STATEMENT OF FACTS

29.      Plaintiff herein incorporates, pleads, and realleges ¶ 1 to ¶ 28 and all Exhibits attached to this Complaint, into each and every paragraph below and vice versa, by reference and in full

8

force and effect, as if originally pled.

**(A) Relevant history with Defendant Cirtin**

30. On May 24, 2016, Plaintiff and Defendant Cirtin communicated jointly by e-mail about the civil suit the City of Springfield filed against the Greene County Commissioners, including, but not limited to Defendant Cirtin.

31. The Springfield News Leader reported Defendant Cirtin asking city officials to provide Greene County three million ($3,000.000.00) tax dollars to help pay for a new jail constituting a "tent" that would be built and situated on the Greene County Sheriff's Department parking lot.

32. On May 24, 2016, Plaintiff sent Defendant Cirtin an e-mail [Exhibit 2] with a list of questions for Plaintiff to decide if he would advocate to spend the tax revenue to build a new jail.

33. On May 24, 2016, Defendant Cirtin sent the Plaintiff an e-mail [Exhibit 2], answering the Plaintiffs' questions, and at the conclusion of his e-mail, Defendant Cirtin wrote:

> I would be pleased to have a face-to-face conversation with you in order to inject a few facts to impact your thinking.

> Thank you for your concern for our citizens.

34. While Plaintiff declined Defendant Cirtin's invitation, to keep everyone in the loop about what was discussed, Defendant Cirtin's above e-mail statement unambiguously shows that he welcomed and cared about what the Plaintiff "thinks" and actively solicited Plaintiffs participation

35. On August 22, 2016, Plaintiff sent Defendant Cirtin an e-mail [Exhibit 3] that provides the Internet website link for Defendant Cirtin to read Plaintiffs article, "I Am" is good enough" that is published on the professional website, Linkedin.

36. On all relevant dates, Defendant Cirtin, held an account with Linkedin [Exhibit 13], and on August 22, 2016, Defendant Cirtin sent Plaintiff three (3) e-mails, the final one holds:

> I care about what everyone thinks. Except for you.

9

37. Defendant Cirtin's above e-mail is an abrupt and complete contradiction form his e-mail on May 24, 2016, and is directly tied to the Plaintiffs' published article, "I Am" is good enough.

38. Defendant Cirtin's two cited e-mails above, and the facts involved, show that Defendant Cirtin's threatening Plaintiff with criminal charges for, what Defendant Cirtin alleged, is repeated unwanted communications, is directly tied to Plaintiffs' published article, "I Am" is good enough, due to Defendant Cirtin's political dissent against Plaintiff's political and / or religious speech.

**(B) Plaintiffs capacity as a duly appointed legal guardian and irreparable harms imposed**

39. Plaintiff is a duly appointed legal guardian with full powers, [Plaintiffs' Exhibits 5 and 6] and has prescribed state mandated duties pursuant to Mo. Rev. Stat. § 475.120.3 (2009), and other statutory authority pursuant to Mo. Rev. Stat. § 475.370.

40. In each e-mail the Plaintiff sends, the signature line explicitly and implicitly gives full and due notice Plaintiff is a court appointed guardian for, which the Defendants received said notice.

41. Mo. Rev. Stat. § 475.120.4 gives Plaintiff and those similarly situated, statutory authority to file a petition with the Greene County Commission for financial funding for Plaintiff's Ward of guardianship special needs. Mo. Rev. Stat. § 475.370 sets forth pleadings requirements and gives the Greene County Commissioners statutory authority to hear and dispose a petition.

42. Defendant Cirtin knows or should know that Mo. Rev. Stat. § 475.370 places him in the capacity, role, and authority of an arbitrator who is authorized by state law to receive, hear, and dispose petitions filed by Plaintiff and those similarly situated, for and on behalf of their Ward's, with severe disabilities, in request for special financial funding assistance from county funds.

43. Defendant Cirtin knows or should know he owes Plaintiff and others similarly situated a legal duty to be fair and impartial in receiving, hearing, and disposing a petition filed by Plaintiff and those similarly situated.

10

44.     Defendant Cirtin knows or should know that as a direct or proximate result of his three e-mails on August 22, 2016, his threatening the Plaintiff with filing a **_false_** police report to commit battery against Plaintiff and criminally harassing Plaintiff, it creates substantial irreparable harms against Plaintiff and those similarly situated, in their clearly established and absolute, positive and specific right to receive a fair and impartial review, hearing, and disposition on their petition.

45.     Defendant Cirtin's conduct is so outrageous as to shock societal and judicial conscience, creates and imposes substantial irreparable harms, and is of such nature and / or effect, that this courts intervention is necessary to protect Plaintiffs' rights, liberties, and privileges.

46.     Defendant Cirtin knew or should have known his conduct violates clearly established, valid, and rational laws, shows a willful and wanton disregard for or deliberate indifference to clearly established laws, rights, liberties, and / or privileges of the Plaintiff and those similarly situated, that his conduct is so outrageous as to shock societal and judicial conscience, is unconscionable, capricious, and arbitrary, pursed in bad faith, malicious, and that his conduct is shocking or offensive to traditional notions of fundamental fairness, but Defendant Cirtin did knowingly, intentionally, willfully, and maliciously engaged in his conduct anyway

**(C) Defendant Cirtin's three e-mails on August 22, 2016.**

47.     On August 22, 2016, the Plaintiff provided Defendant Cirtin with a copy of the Plaintiffs' published article [Exhibit 1] by e-mail, to engage in civil political discussions. Since Defendant Cirtin showed obvious interest in what the Plaintiff "thinks" by the May 24, 2016, e-mail thread, the Plaintiff saw nothing wrong in sending Defendant Cirtin a copy of his published article.

48.     On August 22, 2016, Defendant Cirtin sent Plaintiff his first e-mail [Exhibit 3] which holds

> Christopher:
>
> You are sending unwanted emails to me.  Remove my name from
> your email list and groups.
> Bob Cirtin

11

49.     Defendant Cirtin carbon copied twenty-nine (29) people on his e-mail; the same people whom Plaintiff sent his e-mail to, with Defendant Cirtin receiving carbon copy of such, to provide the Internet website link to Plaintiffs' article, "I Am" is good enough.

50.     Defendant Cirtin's e-mail contains no markers to identify him as a government official, which he methodically concealed with purpose to falsely hold himself out as being some mere unsuspecting private citizen receiving unwanted "spam e-mail" from the Plaintiff.

51.     In response, the Plaintiff sent Defendant Cirtin an e-mail [Exhibit 3] exposing Defendant Cirtin's government position and title, and pointing out the Plaintiff was engaged in protected activities with government officials and others, by lawful political speech and expression.

52.     On August 22, 2016, Defendant Cirtin sent Plaintiff his second e-mail [Exhibit 4] in reply to Plaintiffs' e-mail, which holds:

> You may want to consult the State's harassment statutes. Everyone is protected against harassment. I know the sheriff believes this to be true which is who I am notifying if I hear from you again.
>
> Bob Cirtin
> Presiding Commissioner
>
> **"Greene County Works . . ."**
>
> Greene County, Missouri
> 933 North Robberson
> Springfield, Missouri 65802
> Office Telephone 417.868.4112
> Facsimile: 417.868.4818
> Website: Greenecountymo.gov



12

53.     Defendant Cirtin sent his second e-mail with all government markers plainly visible so as to communicate that he acted pursuant to state law, under color of state law, and pursuant to the meeting of the minds he and Defendant Arnott have and their agreement to enforce state law [Mo. Rev. Stat. § 565.090.1(5)] that prohibits *repeated unwanted communications*."

54.     Defendant Cirtin knows or should know that the Supreme Court of Missouri invalidated, severed, and made wholly unenforceable subdivision (5) of Mo. Rev. Stat. § 565. 090.1, over four (4) years ago.

55.     Therefore, and acting pursuant to state law, under color of state law and pursuant to the meeting of the minds he and Defendant have and their agreement to enforce said state law illegally and / or unlawfully, Defendant Cirtin knowingly, willfully, intentionally and maliciously threatened Plaintiff with filing a ***false and malicious*** police report against Plaintiff.

56.     Defendant Cirtin did this with purpose of knowingly, willfully intentionally, and maliciously intimidating, frightening, coercing, or causing Plaintiff to suffer emotional distress by committing battery and criminal harassment against Plaintiff, to force the Plaintiff to abstain from engaging in his constitutionally protected activities by his political speech.

57.     Plaintiff perceived Defendant Cirtin's threat as Defendant Cirtin being a schoolyard bully to maliciously harass Plaintiff. Plaintiff became infuriated because of Defendant Cirtin's conduct and threats to have the Plaintiff criminally charged, and placing not only the Plaintiff at severe risk of being arrested and jailed, but also endangering Plaintiffs' Ward who is and because he is, wholly dependent upon the Plaintiff, as Plaintiff has full guardianship of his Ward.

58.     Thus, seeing Defendant Cirtin's e-mailed statement involving Defendant Arnott, Plaintiff was fearful for his personal safety and that of his Ward's personal safety.

13

59.     The third and final e-mail [Exhibit 3] from Defendant Cirtin explains why Defendant Cirtin did not want communications from the Plaintiff, as such holds:

>   I care about what everyone thinks. Except for you.
>
>   Bob Cirtin
>   Presiding Commissioner
>
>   **"Greene County Works . . ."**
>
>   Greene County, Missouri
>   933 North Robberson
>   Springfield, Missouri 65802
>   Office Telephone 417.868.4112
>   Facsimile: 417.868.4818
>   Website: Greenecountymo.gov



60.     In contrast to Defendant Cirtin's email [*at* ¶ 33] on May 24, 2016, Defendant Cirtin's e-mails [*at* ¶ 52 and ¶ 59] on August 22, 2016, such shows an abrupt contradiction in his political positions. When all four (4) e-mails are read together in harmony, such unambiguously shows Defendant Cirtin threatened Plaintiff because of his own political dissent against the Plaintiffs' political and religious speech **_specifically in_** Plaintiffs' published article, "I Am" is good enough.

61.     Moreover, not only does Defendant Cirtin's e-mail [at ¶ 52] show that Defendant Cirtin receives preferential treatment by streamlining criminal complaints directly to Defendant Arnott instead of using the same 911 telephone system that Defendant Arnott demands the Plaintiff

14

use, but also it shows that Defendant Cirtin and Arnott have an agreement to criminally charge or to threaten to do the same to people lawfully engaged in protected activities, by enforcing a state law that they know or should know is invalid, severed and made wholly unenforceable.

62.     Defendant Cirtin knew or should have known his conduct violates clearly established, valid, and rational constitutional and statutory laws, shows a willful and wanton disregard for and deliberate indifference to clearly established laws, rights, liberties, and / or privileges of the Plaintiff and those similarly situated, that his conduct is so outrageous as to shock societal and judicial conscience, is unconscionable, capricious, arbitrary, pursed in bad faith and malicious, and that his conduct is shocking or offensive to traditional notions of fundamental fairness, but Defendant Cirtin did knowingly, intentionally, willfully, and maliciously engaged in his conduct anyway.

**(D) Defendant Arnott's and Plaintiffs' e-mailed correspondences**

63.     On August 22, 2016, Defendant Cirtin sent Plaintiff an e-mail [*at* ¶ 52] that shows: (1) Defendant Arnott aided and / or abetted Defendant Cirtin's illegal and / or unlawful conduct and Defendant Cirtin relied on Defendant Arnott aiding and / or abetting him, (2) Defendant Arnott is a knowing co-conspirator, and, (3) Defendant Cirtin will and is permitted to streamline his police report directly to Defendant Arnott to carry out and enforce for Defendant Cirtin against Plaintiff.

64.     As a direct or proximate result, Plaintiff held a valid, rational, and good cause reason to send his e-mails [Exhibits 4 and 9] to Defendant Arnott, which he knew, should have known.

65.     In the Plaintiffs' first e-mail to Defendant Arnott [Exhibit 9] the Plaintiff provided him with a copy of **State v. Vaughn** 366 S.W.3d 513 (Mo 2012) (en banc) [Exhibit 10], to substantiate his complaint against Defendant Cirtin and defend against any criminal complaint Defendant Cirtin was or would file against Plaintiff for allegedly violating Mo. Rev. Stat. § 565.090.1(5) (2016).

15

66.     Because of Defendant Cirtin's and Arnott's meeting of the minds and agreement, Cirtin having a supervisory position and authority over Defendant Arnott and deputy sheriffs', and the obvious preferential treatment Cirtin receives in streamlining his complaints to Arnott, Plaintiff did not believe he would be permitted to file a criminal complaint against Cirtin. Therefore, the Plaintiff attempted to correct and stop Cirtin's criminal conduct by requesting Arnott to properly advise Cirtin to immediately cease and desist, and, thus, by using the least adversarial manner.

67.     The Plaintiff pointed out his concerns to Defendant Arnott, about Defendant Cirtin having substantial influence or control, implicating Defendant Arnott as being a co-conspirator in his criminal acts, and that the Plaintiff did not believe calling 911 would solve the issues and correct Defendant Cirtin's criminal acts. Thus, the Plaintiff made *repeated requests* to Defendant Arnott to properly advise Defendant Arnott to immediately cease and desist in his criminal acts.

68.     At no time did Defendant Arnott disavow that he is a co-conspirator and at no time did he inform the Plaintiff that he did or would to properly advise Defendant Cirtin to immediately cease and desist in his criminal acts. Rather, Defendant Arnott choose instead to send Plaintiff e-mails threatening him if he did not stop communicating with Defendant Arnott to report the criminal acts of Defendant Cirtin. Defendant Arnott was clear enough in that he did not care, did not want to know, and was not going to take corrective actions directly with Defendant Cirtin, to quell and suppress his engaging in battery and criminal harassment against the Plaintiff.

69.     Instead, Defendant Arnott instructed the Plaintiff to call 911 instead if he wanted to report Defendant Cirtin's criminal acts, which did not inspire Plaintiff to have any degree of confidence and trust because given Defendant Cirtin's political position and power, his substantial influence and control over the Sheriffs' Department and all its personnel, his implicating Defendant Arnott as a co-conspirator by their meeting of the minds and agreement to illegally and / or unlawfully

16

enforce and unenforceable and non-existent law, and Defendant Arnott making it very clear that he does not care about what criminal acts Defendant Cirtin was committing, the Plaintiff held the belief that nothing would be done to stop Defendant Cirtin's criminal acts and nothing was done.

70. Acting pursuant to state law, under color of state law, and pursuant to the meeting of the minds or agreement that Defendant Arnott and Cirtin had, Defendant Arnott knowingly, willfully, intentionally, and maliciously failed or refused to comply with his statutory mandate to quell and suppress battery, pursuant to 57.100.1, by doing as he was repeatedly, explicitly and implicitly requested to do, in giving Defendant Cirtin proper advisement to immediately cease and desist in his criminal acts against the Plaintiff.

71. Acting pursuant to state law, under color of state law, and pursuant to the meeting of the minds or agreement that Defendant Arnott and Cirtin had, Defendant Arnott knowingly, willfully, intentionally, and maliciously failed or refused to make formal request for the Missouri Highway Patrol to intervene, investigate and correct the criminal acts of Defendant Cirtin, pursuant to Mo. Rev. Stat. § 43.180.1 (2016) for, which Defendant Arnott knew, should have known, or could reasonably foresee was the prudent thing to do, and his legal or fiduciary duty owed to Plaintiff.

72. Defendant Arnott knew or should have known his conduct violates clearly established, valid, and rational laws, shows a willful and wanton disregard for and deliberate indifference to his statutory duties, Plaintiffs' repeated requests, and clearly established laws rights, liberties, and / or privileges of the Plaintiff and those similarly situated, that his conduct is so outrageous as to shock societal and / or judicial conscience, is unconscionable, capricious, and arbitrary, pursed in bad faith, malicious, and that his conduct is shocking or offensive to traditional notions of fundamental fairness, but Defendant Arnott did knowingly, intentionally, willfully, and maliciously engaged in his conduct anyway.

17

**(E). Ongoing retaliatory conduct, further threats, and other acts.**

73.     On August 22, 2016, Defendant Cirtin gave Plaintiff written notice that he and Defendant Arnott have a meeting of the minds and the agreement to enforce Mo. Rev. Stat. § 565.090.1(5) with purpose to prevent Plaintiff, and those similarly situated, from communicating with Cirtin, by filing a police report. Plaintiff reasonably believed that this would include arresting, incarcerating, and prosecuting the Plaintiff, and those similarly situated based on filing a false police report.

74.     A reasonable inference can be drawn from Cirtin's notice that Defendant Arnott instructs his deputy sheriff's to enforce the criminal penalties [Mo. Rev. Stat. § 565.090.2(1)(2) in that of filing a criminal complaint against citizens whom Defendant Cirtin and other government officials accuse of violating Mo. Rev. Stat. § 565.090.1(5) by "repeated unwanted communications."

75.     Furthermore, a reasonable inference can be drawn from Defendant Cirtin's notice that this also includes deputy sheriff's working at the Greene County Jail, enforcing the state law by incarcerating any person arrested by a police officer with the City of Springfield.

76.     On August 22, 2016, Plaintiff provided both Defendant's Cirtin and Arnott with a copy of the Missouri Supreme Court ruling invalidating, severing and making wholly unenforceable Mo. Rev. Stat. § 565.090.1(5) so as to make enforcement of the law unconstitutional and criminal.

77.     At no time then or at any time thereafter did either Defendant dispute the court ruling.

78.     At no time then or at any time thereafter did either Defendant withdraw their threat to file a police report against the Plaintiff, nor did they rescind their demand that the Plaintiff no longer communicate with either of them, to restore the Plaintiffs' right and liberty to communicate with publicly elected government officials.

79.     In fact, upon the Plaintiff serving notice upon both Defendants that the law they sought to enforce is, in fact, invalid, severed, and made wholly unenforceable, Defendant Cirtin ignored

18

the Plaintiff by sending no responding e-mail to the Plaintiff to withdraw his threat and demand, whereas Defendant Arnott continued to make open-ended threats against the Plaintiff to further his efforts to stop the Plaintiff from requesting that he perform his statutory duties by properly instruct Defendant Cirtin to immediately cease and desist his criminal acts against the Plaintiff.

80.     On August 22, 2016, the Plaintiff also gave both Defendants notice that if they attempted to act on their threats against the Plaintiff, he would file a civil rights lawsuit against both of them in federal court.

81.     Approximately one (1) hour after all e-mail communications stopped, the Plaintiff and his Ward were sitting in their house with the lights on and their front door opened, when they both saw a spotlight shining directly into their house by way of their front door. Upon going them both going to the front door, the Plaintiff and his Ward saw a police vehicle pulling away from the curb in front of their house with the hand operated spotlight on the driver's door still on.

82.     At no time did Plaintiff or his Ward call for police assistance, and there were no prowlers in or around their house, to show the police officer had any probable cause to be shining his hand-operated spotlight directly into their house.

83.     The conduct of the police officer threatened the Plaintiffs' Ward, who told the Plaintiff he was frightened because he believed the police officer was there to arrest the Plaintiff because of the threats the Defendants made against the Plaintiff. The Ward also stated he was worried for his own safety, as well, as he did not know what would happen to him if Plaintiff was arrested.

84.     The conduct of the police officer threatened the Plaintiff, and caused the Plaintiff to be frightened and sustain emotional distress, as he too believed the police officer was acting on the Defendants behalf, to continue harassing the Plaintiff. The Plaintiff believed the police officer and Defendants were sending a loud message to the Plaintiff that he is being watched and will

19

be retaliated against if the Plaintiff continues to exercise or attempt to exercise his rights, and the Plaintiff became fearful for his own safety and that of his Ward, who is wholly dependent upon the Plaintiff because of his severe disabilities and the Plaintiff having full guardianship.

85.     After two days of thinking about things, the Plaintiff decided to send the Chief of Police, Paul Williams, for the City of Springfield, an e-mail informing him about the police officer shining his spotlight directly into the Plaintiffs house, and the Plaintiff informed Paul Williams that while the police could assert some pretext excuse for the police officers conduct, the Plaintiff believed it was done for and on behalf of the Defendants to threaten and harass the Plaintiff.

86.     At no time then or any time thereafter did Paul Williams send the Plaintiff a reply e-mail to even acknowledge the Plaintiffs' e-mail, to ask the Plaintiff any questions, or to let the Plaintiff know that an internal investigation would be conducted. It was plainly evident that Paul Williams simply did not care and was not going to do anything to correct and stop the conduct, which only furthered the Plaintiffs' belief about why the police officer shined his spotlight directly into the Plaintiffs' house.

87.     Defendant Arnott and Cirtin knew or should have known their conduct violates clearly established, valid, and rational laws, shows a willful and wanton disregard for and deliberate indifference to their statutory and legal duties owed  the Plaintiff and those similarly situated, that their conduct is so outrageous as to shock societal and / or judicial conscience, is unconscionable, capricious, and arbitrary, pursed in bad faith, malicious, and that their conduct is shocking or offensive to traditional notions of fundamental fairness, but Defendant Arnott and Cirtin did knowingly, intentionally, willfully, and maliciously engaged in their conduct anyway.

## COUNT I
## [Deprivation of United States Constitutional Rights]

20

88.    Plaintiff herein incorporates, pleads, and realleges ¶ 1 to ¶ 87 and all Exhibits attached to this Complaint, into each and every paragraph below and vice versa, by reference and in full force and effect, as if originally pled.

89.    Federal law provides that every person who, under color of state law, custom, or practice, subjects any other person to deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable at law, in equity, and in any other proceeding necessary to obtain redress for such deprivation. See 42 U.S.C. § 1983.

90.    On all relevant dates, Plaintiff, and those similarly situated, held a substantial protected property interest in that of personal liberty, and the absolute, positive, and specific right to exercise or attempt to exercise his / their substantial property interests and his / their clearly established, guaranteed, and protected constitutional rights, liberties, and / or privileges, to express his / their political or religious speech, and to redress grievances, with the Defendants.

91.    On all relevant dates, Plaintiff, and those similarly situated, exercised or attempted to exercise his / their substantial property interests and his / their clearly established, guaranteed and protected constitutional rights and liberties with the Defendants, respectively, and the constitutional deprivations outlined herein were caused by the Defendant's willful and wanton disregard for or deliberate indifference to clearly established laws under the U.S. and Missouri Constitutions and statutory laws.

92.    The Defendants and both of them, had actual knowledge of the practices and conduct at issue, and acting pursuant state law, under color of state law, and pursuant to their meeting of the minds or agreement, knowingly, willfully, intentionally, and maliciously deprived or abridged the clearly established rights, liberties, and / or privileges of the Plaintiff and those similarly situated.

21

93. Defendants' conduct threatens substantially protected property interests of Plaintiff and those similarly situated, in that of personal and protected liberties, and Defendants' conduct is truly outrageous, irrational, arbitrary, capricious, pursued in bad faith, malicious, done with intent to severely and pervasively punish Plaintiff and those similarly situated, under threat of false criminal charges and with it, arrest and incarceration, and their conduct is shocking or offensive to traditional notions of fundamental fairness, and shocks societal and / or judicial conscience.

WHEREFORE, Plaintiff respectfully requests this Court to:

(a) Declare unconstitutional, facially and as applied to Plaintiff and those similarly situated, the conduct of both the Defendants either individually or jointly;

(b) Enter an order granting Plaintiff an injunction against the Defendants individually or collectively to prohibit the Defendants from engaging in conduct that deprives or abridges the constitutional and state-created rights, liberties, and / or privileges, and statutory guardianship duties and authority of the Plaintiff and those similarly situated.

(c) Award damages to Plaintiff in an amount in excess of One Million Dollars; and

(d) Award all other relief allowable for such conduct, including costs and expenses for this action.

(e) Grant such further relief as this court deems just and proper.

## COUNT II
### [Deprivations of Missouri Constitutional Rights]

94. Plaintiff herein incorporates, pleads, and realleges ¶ 1 to ¶ 93 and all Exhibits attached to this Complaint, into each and every paragraph below and vice versa, by reference and in full force and effect, as if originally pled.

95. In the Missouri Constitution's Bill of Rights, the people assert their rights, acknowledge their duties, and proclaim the principles upon which their government is founded. See *preamble to Art. I.*

22

96.     The provisions of the Bill of Rights are fundamental limitations on government, declaring the rights that exist without any government grant and in a sphere beyond the government's reach.

97.     Any governmental act in violation of constitutional rights is void *ab initio*.

98.     As such, the Bill of Rights are self-executing and the violation of rights withheld by the people may be challenged and compensated by a common law action.

99.     The Missouri Constitution insures every person the protection against deprivation of life, liberty, and / or property without due process of law, thereby incorporating constitutional and fundamental guarantees explicitly and implicitly reflected in, *inter alia*, the federal Constitution.

100.    On all relevant dates, Plaintiff, and those similarly situated, held a substantial protected property interest in that of personal liberty, and the absolute, positive, and specific right to exercise or attempt to exercise his / their substantial property interests and his / their clearly established, guaranteed, and protected constitutional rights, liberties, and / or privileges, to express his / their political or religious speech, and to redress grievances, with the Defendants.

101.    On all relevant dates, Plaintiff, and those similarly situated, exercised or attempted to exercise his / their substantial property interests and his / their clearly established, guaranteed and protected constitutional rights and liberties with the Defendants, respectively, and the constitutional deprivations outlined herein were caused by the Defendant's willful and wanton disregard for or deliberate indifference to clearly established laws under the U.S. and Missouri Constitutions and statutory laws.

102.    The Defendants and both of them, had actual knowledge of the practices and conduct at issue, and acting pursuant state law, under color of state law, and pursuant to their meeting of the minds or agreement, knowingly, willfully, intentionally, and maliciously deprived or abridged

23

the clearly established rights, liberties, and / or privileges of the Plaintiff and those similarly situated.

103.    Defendants' conduct threatens substantially protected property interests of Plaintiff and those similarly situated, in that of personal and protected liberties, and Defendants' conduct is truly outrageous, irrational, arbitrary, capricious, pursued in bad faith, malicious, done with intent to severely and pervasively punish Plaintiff and those similarly situated, under threat of false criminal charges and with it, arrest and incarceration, and their conduct is shocking or offensive to traditional notions of fundamental fairness, and shocks societal and / or judicial conscience.

WHEREFORE, Plaintiff respectfully requests this Court to:

(a)    Declare unconstitutional, facially and as applied to Plaintiff and those similarly situated, the conduct of the Defendants either individually or jointly;

(b)    Enter an order granting Plaintiff an injunction against the Defendants individually or collectively to prohibit the Defendants from depriving or abridging the constitutional rights, liberties, and / or privileges of the Plaintiff and those similarly situated.

(c)    Award damages to Plaintiff in an amount in excess of One Million Dollars; and

(d)    Award all other relief allowable for such conduct, including costs and expenses for this action, and such other

(e)    Grant such further relief as this court deems just and proper.

## COUNT III
### [Violation of Missouri Statutory Rights And State-Created Liberties]

104.    Plaintiff herein incorporates, pleads, and realleges ¶ 1 to ¶ 103 and all Exhibits attached to this Complaint, into each and every paragraph below and vice versa, by reference and in full force and effect, as if originally pled.

105.    In the Missouri Constitution's Bill of Rights, the people assert their rights, acknowledge

24

their duties, and proclaim the principles upon which their government is founded. <u>See</u> **preamble to Art. I**.

106.    Provisions of the Bill of Rights are fundamental limitations on government, declaring the rights that exist without any government grant and in a sphere beyond the government's reach.

107.    Any governmental act in violation of constitutional rights is void *ab initio*.

108.    As such, the Bill of Rights are self-executing and the violation of rights withheld by the people may be challenged and compensated by a common law action.

109.    The Missouri Constitution insures every person the protection against deprivation of life, liberty, and / or property without due process of law, thereby incorporating constitutional and fundamental guarantees explicitly and implicitly reflected in, *inter alia*, the Federal Constitution.

110.    The Missouri General Assembly also codified these constitutional rights and liberties into state statutory laws; making it a criminal offense to file a false police report, to threaten to do the same, to commit battery in order to force a person to perform or abstain from performing a specified act, and ensuring that people with severe disabilities who have a duly appointed legal guardian have a viable pathway for financial assistance by their guardian being able to petition for county funding before a fair and impartial tribunal.

111.    The Supreme Court of Missouri invalided, severed and made wholly unenforceable the provision of law, subdivision (5), in Mo. Rev. Stat. § 565.090.1, because "*repeated unwanted communications*" is ambiguous, arbitrary, capricious, irrational, allows bad faith application of the law, and the court ruled that subdivision (5) is unconstitutionally overbroad for, which the Defendants knew or should have known, but knowingly, willfully, intentionally, and maliciously engaged in their illegal and / or unlawful conduct anyway.

112.    On all relevant dates, Plaintiff, and those similarly situated, held a substantial protected

25

property interest in that of personal liberty, and the absolute, positive, and specific right to exercise or attempt to exercise his / their substantial property interests and his / their clearly established, guaranteed, and protected constitutional rights, liberties, and / or privileges, to express his / their political or religious speech, and to redress grievances, with the Defendants.

113.    On all relevant dates, Plaintiff, and those similarly situated, exercised or attempted to exercise his / their substantial property interests and his / their clearly established, guaranteed and protected constitutional rights and liberties with the Defendants, respectively, and the constitutional deprivations outlined herein were caused by the Defendant's willful and wanton disregard for or deliberate indifference to clearly established laws under the U.S. and Missouri Constitutions and statutory laws.

114.    The Defendants and both of them, had actual knowledge of the practices and conduct at issue, and acting pursuant state law, under color of state law, and pursuant to their meeting of the minds or agreement, knowingly, willfully, intentionally, and maliciously deprived or abridged the clearly established rights, liberties, and / or privileges of the Plaintiff and those similarly situated.

115.    Defendants' conduct threatens substantially protected property interests of Plaintiff and those similarly situated, in that of personal and protected liberties, and Defendants' conduct is truly outrageous, irrational, arbitrary, capricious, pursued in bad faith, malicious, done with intent to severely and pervasively punish Plaintiff and those similarly situated, under threat of false criminal charges and with it, arrest and incarceration, and their conduct is shocking or offensive to traditional notions of fundamental fairness, and shocks societal and / or judicial conscience.

WHEREFORE, Plaintiff respectfully requests this Court to:

(a) Declare unconstitutional, facially and as applied to Plaintiff, the conduct of both the

26

Defendants either individually or jointly;

(b) Enter an order granting Plaintiff an injunction against the Defendants individually or collectively to prohibit the Defendants from depriving or abridging Plaintiffs constitutional rights, liberties, and / or privileges;

(c) Award damages to Plaintiff in an amount in excess of One Million Dollars; and

(d) Award all other relief allowable for such conduct, including costs and expenses for this action, and such other

(e) Grant such further relief as this court deems just and proper.

## COUNT IV
## [Declaratory Judgment]

116. Plaintiff herein incorporates, pleads, and realleges ¶ 1 to ¶ 115 and all Exhibits attached to this Complaint, into each and every paragraph below and vice versa, by reference and in full force and effect, as if originally pled.

117. As established above, the policies, practices and conduct of Defendants has, does, and will continue to deprive the Plaintiff and those similarly situated, of their constitutional rights of due process and equal protection law guaranteed by the Fourteenth Amendment to the U.S. Constitution and Article I, § 10 of the Missouri Constitution, which the Defendants and both of them know or should know, yet the Defendants and both of them persist and refuse to abate said conduct, policies, and / or practices.

118. The controversy arising from the Defendants policies, practices or conduct is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment and is complementary to the injunctive relief requested below.

119. This Court's intervention is necessary to declare the rights and other legal relations of the Plaintiff and those similarly situated.

27

120.     Plaintiff has standing to obtain a declaratory of their rights because the Plaintiff and the Defendants are in a dispute regarding their rights.

121.     Plaintiff has no adequate remedy at laws and the Plaintiff and those similarly situated sustain substantial and ongoing irreparable harms in their rights, liberties, and / or privileges guaranteed to them by both the United States and Missouri Constitutions, and statutory laws.

WHEREOFRE, for these reasons, the Court should declare that:

(a) The policies, practices, and conduct of the Defendants deprived the Plaintiff of his clearly established rights, liberties, and / or privileges under the United States and / or Missouri Constitution(s);

(b) The policies, practices, and conduct of the Defendants deprived the Plaintiff of his clearly established rights, liberties, and / or privileges under state laws;

(c) The policies, practices, and conduct of the Defendants impose substantial risks for the Plaintiff to sustain irreparable harms to the Plaintiff in his rights, liberties, and / or privileges;

(d) The policies, practices, and conduct of the Defendants impose substantial risks for the Plaintiff to sustain irreparable harms to the Plaintiff in his ability to discharge his prescribed state mandated guardianship duties and statutory authority, and to assist his Ward, in exercising his rights, liberties, or privileges under the Americans with Disabilities Act;

(e) Awarding Plaintiff all fees, expenses and costs herein

## COUNT V
## [Injunctive Relief]

122.     Plaintiff herein incorporates, pleads, and realleges ¶ 1 to ¶ 121 and all Exhibits attached to this Complaint, into each and every paragraph below and vice versa, by reference and in full force and effect, as if originally pled.

123.     Plaintiff seeks permanent injunctive relief to protect his rights and to prevent any further

28

deprivation of rights by Defendants.

124. Plaintiff has no adequate remedy at laws and the Plaintiff and those similarly situated sustain substantial and ongoing irreparable harms in their rights, liberties, and / or privileges guaranteed to them by both the United States and Missouri Constitutions, and statutory laws.

125. Plaintiff has standing to obtain injunctive relief because, among other things, the Plaintiffs' constitutional rights are being and will continue being deprived by the continuation of the unchallenged conduct of Defendants.

126. As established above, the policies, practices, and conduct of Defendants has deprived Plaintiff and will deprive Plaintiff of his constitutional rights of due process and equal protection in violation of the United States and Missouri Constitutions.

127. Defendants know or should know that their policies, practices and conduct deprive Plaintiff of his constitutional rights, due process and equal protection in violation of the United States and Missouri Constitutions, yet persist and refuse to abate said conduct.

128. The challenged action is presently occurring and certain to occur in the immediate future.

129. Plaintiff and those similarly situated will continue to suffer substantial irreparable harms in their clearly established rights, liberties, or privileges absent injunctive relief.

130. Defendants will suffer no harm if an injunction is issued.

131. The balance of harms weighs in favor of entry of an injunction.

132. It is in the public interest to enter an injunction that prevents Defendants from continuing to deprive Plaintiffs of their rights as secured by the United States and Missouri Constitutions.

133. No previous injunctive relief has been awarded with respect to this matter.

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully request that the Court

29

enter an Order:

134.  Enjoining the Defendants, their officers, agents, servants, employees, and attorneys, as well as those persons in active concert or participation with them who receive actual notice of this Injunction by personal service, posting, or otherwise, from engaging in the conduct alleged in this Complaint against the Plaintiff and others similarly situated.

135.  Requiring Defendants, their officers, agents, servants, employees, and attorneys, as well as those persons in active concert or participation with them who receive actual notice of this Injunction by personal service, posting, or otherwise, to immediately cease and desist any and all efforts, plans practices, policies and conduct which would adversely affect participation in the protected activities, state mandated duties, and / or statutory authority under Mo. Rev. Stat. § 475.120, Mo. Rev. Stat. § 475.370, and the Americans with Disabilities Act, by the following:

(a) establishing and publishing on the Greene County Commission Internet website, in a plainly visible and easily accessible location, and with the ability to download and print specific, clear, and easy to read and understand policies and procedures in layman language, for a guardian to petition the County Commission for financial funding for the Ward of guardianship;

(b)  establishing and publishing on the Greene County Commission Internet website, in a plainly visible and easily accessible location, and with the ability to download and print specific, clear, and easy to read and understand policies and procedures in layman language, for a guardian to appeal a denial of their petition for financial funding.

(c)  establishing and publishing on the Greene County Commission Internet website, in a plainly visible and easily accessible location, and with the ability to download and print specific, clear, and easy to read and understand policies and procedures in layman language, for a guardian to remove a County Commissioner from presiding over and rendering any decision

30

about the petition filed by a guardian for financial funding for the Ward of guardianship.

(d) establishing and publishing on the Greene County Commission Internet website in a plainly visible, easily accessible location, and with the ability to download and print specific, clear, and easy to read and understand forms that the guardian may use, at their discretion, to petition for financial funding for the Ward of guardianship.

(e) establishing and publishing on the Greene County Sheriff's Department Internet website in a plainly visible, easily accessible location, and with the ability to download and print specific, clear, and easy to read and understand policies and procedures for a citizen petition the County Sheriff's Department and County Sheriff, to formally request the Missouri Highway Patrol intervene and investigate any publicly elected or other government official including, but not limited to. the Greene County Commissioners, Greene County Sheriff, and Greene County Deputy Sheriffs.

136.    Requiring Defendants, their officers, agents, servants, employees, and attorneys, as well as those persons in active concert or participation with them who receive actual notice of this Injunction by personal service, posting, or otherwise, to:

(a) establish and publish on the Greene County Commission and Greene County Sheriff's Department Internet websites, respectively, and in a plainly visible, easily accessible location, and with the ability to download and print specific, clear, and easy to read and understand policies and procedures, and giving regular notice in a major newspaper in Greene County, of said policies and procedures for a citizen to report their having been or some-one whom they know, having been subjected to or caused to be subjected to violations of their Fourth and Fourteenth Amendment rights, liberties, and / or privileges as a result of having been arrested, charged, prosecuted, or convicted of a violation of Mo. Rev. Stat. § 565.090.1(5) since

31

May 29, 2012, or otherwise having their person or property searched and / or seized by any law enforcement officer as a direct or proximate result of having been accused of violating Mo. Rev. Stat. § 565.090.1(5) since May 29, 2012.

(b) establish and publish on the Greene County Commission and Greene County Sheriff's Department Internet websites, respectively, and in a plainly visible, easily accessible location, and with the ability to download and print specific, clear, and easy to read and understand policies and procedures, and giving regular notice in a major newspaper in Greene County, of said policies and procedures for a citizen to have any property returned to them that was seized at any time, as a direct or proximate result of their being accused of, arrest for, or convicted of violating Mo. Rev. Stat. § 565.090.1(5) since May 29, 2012.

137.    Granting such other further relief as is just and proper, including fees, expenses, and costs.

Respectfully submitted,

Christopher Cross, pro se Plaintiff
P.O. Box 5814
Springfield, Missouri 65801
816.805.9259
Legal_Guardian77@yahoo.com

32